**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SHARI WINSLOW,

                                   **Plaintiff,**

          **v.**                                          **6:17-CV-83**
                                                               **(FJS/ATB)**

PULASKI ACADEMY and CENTRAL
SCHOOL DISTRICT; PULASKI
ACADEMY BOARD OF EDUCATION; and
BRIAN HARTWELL *individually and in his official*
*capacity as Superintendent of Schools*,

                                **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **GATTUSO & CIOTOLI, PLLC** | **STEPHEN CIOTOLI, ESQ.** |
| The White House | |
| 7030 East Genesee Street | |
| Fayetteville, New York 13066 | |
| Attorneys for Plaintiff | |
| | |
| **BOND, SCHOENECK & KING, PLLC** | **CURTIS A. JOHNSON, ESQ.** |
| 350 Linden Oaks | **JEFFREY F. ALLEN, ESQ.** |
| Suite 310 | **JOSEPH S. NACCA, ESQ.** |
| Rochester, New York 14625 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

    Shari Winslow ("Plaintiff"), the former Director of Special Services at Pulaski Academy

and Central School District ("Defendant District"), brought this action based on gender and age

discrimination against Defendant District, its Board of Education ("Defendant Board"), and its

Superintendent of Schools ("Defendant Hartwell") seeking compensatory damages, attorney's fees, and costs. *See generally* Dkt. No. 1, Compl. Pending before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 34.

## II. BACKGROUND

Defendant District hired Plaintiff as the Director of Special Services on July 1, 2005. *See* Dkt. No. 1 at ¶ 11. She served in that capacity for ten years, having earned tenure and a promotion to Director of Special Services, Assessment and Data. *See id.* In September of 2014, Defendant District hired Defendant Hartwell as Superintendent of Schools. *See id.* at ¶ 14. Plaintiff contends that, immediately upon taking the position, Defendant Hartwell subjected her to hostile and offensive conduct, including yelling at her in the workplace in front of colleagues, demeaning her input, reducing or refusing to allow her to perform her job duties and responsibilities, and making fundamental changes to the essential elements of her job without prior notice or good cause. *See id.* at ¶ 15. Defendant Hartwell claims that he had learned of complaints and criticisms of Plaintiff's job performance from numerous sources soon after he started. *See* Dkt. No. 34-7, Defs' Stmt. of Material Facts, at ¶ 5. Plaintiff, to the contrary, alleges that she received excellent performance evaluations from her superiors throughout her employment and maintained an "impeccable" record of accomplishments. *See* Dkt. No. 1 at ¶ 12.

Plaintiff alleges that Defendant Hartwell's hostility towards her continued into early March 2015, when the events leading to this lawsuit culminated. According to Defendants, on March 2, 2015, Plaintiff assumed the responsibility for personally overseeing a new student

with special needs. *See* Dkt. No. 34-7, Defs' Stmt. of Material Facts, at ¶ 45.[1]  During that school day, the student ran away from Lura M. Sharp Elementary School and was "pursued through the streets" by school personnel. *See id.* at ¶¶ 46, 49.  The elementary school principal allegedly emailed Defendant Hartwell that day about the student escaping from school while under Plaintiff's supervision. *See id.* at ¶¶ 47-48.

By happenstance, around 11:00 a.m. on the next day, March 3, 2015, Plaintiff finally complained about Defendant Hartwell's allegedly abusive conduct to Sheilla Roth, Defendant District's Business Administrator and Title IX Coordinator. *See* Dkt. No. 1 at ¶ 19.  According to Ms. Roth, Plaintiff stated that she felt Defendant Hartwell was "bullying" her because she was the "highest paid administrator" in Defendant District. *See* Dkt. No. 34-2, Roth Decl., at ¶ 6.  Ms. Roth reported that conversation to Defendant Hartwell at some point over the next few days, though she could not recall precisely when. *See id.* at ¶ 11.

Later that very same day, March 3, 2015, Ms. Roth witnessed Plaintiff "yelling" into the phone at a parent. *See* Dkt. No. 34-6, Roth Depo, at 23:15-25:7; *see also* Dkt. No. 34-1, Hartwell Decl., at ¶ 41.  Defendant Hartwell stated that Ms. Roth informed him via email at approximately 2:57 p.m. of a "loud conversation" that she overheard with the parent of a student. *See* Dkt. No. 34-1 at ¶ 41 (citing Dkt. No. 34-1, Ex. H).

The next day, March 4, 2015, Defendant Hartwell and Ms. Roth allegedly confronted Plaintiff together in her office. *See* Dkt. No. 1 at ¶ 21.  Defendant Hartwell allegedly threatened Plaintiff that he would bring § 3020-a charges against her[2]; and, Plaintiff claims, he told her to

---

[1] Plaintiff denies that she had sole responsibility to oversee the new student personally. *See* Dkt. No. 35-3, Pls Response to Defs' Stmt. of Material Facts, at ¶¶ 45-50.

[2] This statement references N.Y. Educ. L. § 3020-a, which establishes the procedure for disciplining tenured teachers and administrators.

"get a lawyer."  *See id.* at ¶ 22.  Additionally, at that time, Defendant Hartwell placed Plaintiff on "administrative leave"; and Plaintiff alleges that he and Ms. Roth "publicly removed [her] from [Defendant] District premises in front of students and staff and ordered her to remain off school property."  *See id.* at ¶¶ 23-24.

Defendant Hartwell contends that he first learned of Plaintiff's March 3rd conversation with Ms. Roth regarding his alleged harassment on March 5, 2015 – the day after he placed Plaintiff on administrative leave.  *See* Dkt. No. 34-7 at ¶ 106.  Plaintiff denies this, alleging that Ms. Roth told Defendant Hartwell about her complaints either the same day, after she spoke to Plaintiff, or in the morning before Plaintiff was placed on administrative leave.  *See* Dkt. No. 35-3, Pl's Response to Defs' Stmt. of Material Facts, at ¶ 106.  Plaintiff thus claims that she was placed on administrative leave because she complained to Ms. Roth; and Defendants claim that she was placed on administrative leave to investigate the incident with the student and parent.

On April 6, 2015, approximately one month after being placed on administrative leave, Plaintiff received a letter from Defendant Hartwell indicating that he was going to make a proposal to Defendant Board the next day, April 7, 2015, that her position as Director of Special Services be abolished.  *See* Dkt. No. 1 at ¶ 27 (citing Dkt. No. 1, Ex. C).  Defendant Board subsequently voted to abolish Plaintiff's position, and her employment was terminated as of June 30, 2015.  *See id.* at ¶¶ 28, 30. (citing Dkt. No. 1, Ex. D).  After abolishing the Director of Special Services position, Defendant Board created a new position, the Executive Director of Academic and Instructional Excellence.  *See* Dkt. No. 34-7 at ¶ 33.  Due to "budget constraints," Defendant District chose to eliminate one administrative position in order to implement the new one it intended to create.  *See id.* at ¶ 34.

Plaintiff alleges that she suffered harm including monetary damages, lost wages, physical and psychological harm, emotional distress, and damage to her professional reputation as a result of Defendants' actions. *See* Dkt. No. 1 at ¶¶ 41, 47, 53, 58, 64, 69, 75, 82, 91. She filed her complaint in this action on January 25, 2017, alleging ten causes of action. *See generally* Dkt. No. 1. After the Court granted in part and denied in part Defendants' motion to dismiss, *see generally* Dkt. No. 18, Memorandum-Decision and Order, the following claims remain:

(1) Plaintiff's first cause of action for gender discrimination pursuant to Title VII against Defendants District and Board;

(2) Plaintiff's third cause of action for retaliation based on gender pursuant to Title VII against Defendants District and Board;

(3) Plaintiff's fifth cause of action for retaliation based on age pursuant to the Age Discrimination in Employment Act ("ADEA") against Defendants District and Board;

(4) Plaintiff's eighth cause of action for gender discrimination and retaliation based on age and gender in violation of the Equal Protection Clause of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983 against all Defendants; and

(5) Plaintiff's ninth cause of action for deprivation of a protected property interest in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments and pursuant to 42 U.S.C. § 1983 against all Defendants.

*See* Dkt. No. 18 at 22-23.

# III. DISCUSSION

## A. Legal standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under this Rule, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a summary judgment motion, a court must resolve any ambiguities and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

## B. Plaintiff's Title VII gender discrimination claim

Employment discrimination cases are analyzed using the "*McDonnell Douglas* test," a three-stage, burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the "*McDonnell Douglas* test," "a plaintiff must first establish a *prima facie* case of discrimination by showing that: '(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817)).

After a plaintiff has established a *prima facie* case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). At that point, the burden "shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817). "If the employer articulates such a reason for its actions, the

burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804, 93 S. Ct. 1817; *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) ("If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action")).

### 1. Adverse employment action

The parties do not dispute that Plaintiff is a woman; and, thus, she is a member of a protected class, nor do they dispute that she was qualified for her position with Defendant District.  *See* Dkt. No. 35, Pl's Memorandum in Opposition, at 11.  Instead, the parties focus on the third and fourth elements of the *McDonnell Douglas* test.

Courts have held that a plaintiff suffers an adverse employment action if she endures a materially adverse change in the terms and conditions of her employment, such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," "a disproportionally heavy workload," or "other indices unique to a particular situation."  *Vega*, 801 F.3d at 85 (quoting [*Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)]; *Feingold [v. New York]*, 366 F.3d [138,] 152-53 [(2d Cir. 2004)]).  Further, an adverse employment action must be "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted)).

Defendants concede that Plaintiff suffered an adverse employment action when Defendant Board eliminated her position.  *See* Dkt. No. 34-8, Defs' Memorandum in Support, at 19.  The parties dispute, however, whether Plaintiff's placement on administrative leave

constituted an adverse employment action.  Defendants point to *Joseph v. Leavitt,* 465 F.3d 87,

91 (2d Cir. 2006), to support their contention that placement on administrative leave is not

adverse.  *See id.*  The Second Circuit in *Joseph* held that an employee does not suffer a

materially adverse change in the terms and conditions of employment to constitute an adverse

employment action where the employer merely enforces its preexisting disciplinary policies in a

reasonable manner, including placing an employee on administrative leave pending an internal

investigation or criminal charges.  *See Joseph v. Leavitt*, 465 F.3d 87, 91-92 (2d Cir. 2006).

The Second Circuit clarified, however, that "our rule is not an absolute one, and that a

suspension with pay may, in some circumstances, rise to the level of an adverse employment

action."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Joseph*, 456 F.3d

at 91).

> "The relevant question is therefore whether the employer has simply applied
> disciplinary procedures to an employee or if the employer has exceeded those
> procedures and thereby changed the terms and conditions of employment. Paid
> suspension during an investigation could thus potentially be adverse if the
> employer takes actions beyond an employee's normal exposure to disciplinary
> policies."

*Id.* (quoting [*Joseph*, 456 F.3d] at 92 n.1).

Plaintiff contends that, after being placed on administrative leave, Defendants "exhibited

an unusual level of animosity towards her," including the following: (1) Defendant District

stopped providing Plaintiff benefits to which she was entitled while still employed by the

District (including tuition reimbursement); (2) Defendants discontinued insurance benefits that

Plaintiff had already paid premiums for, causing her to go a month without medication she

needed; (3) Defendants changed her email password so she could no longer access her email

while still an employee; (4) Plaintiff was not allowed to collect personal documents from her

work computer when she requested access; and (5) Plaintiff was not allowed to retrieve her

graduate work or software that she personally paid for from her work computer. *See* Dkt. No. 35 at 26-27. The Court finds that these actions against Plaintiff, particularly losing tuition reimbursement and insurance benefits for one month while remaining an employee, constituted a diminution in salary and a material loss of benefits. Therefore, the Court finds that placing Plaintiff on administrative leave constituted an adverse employment action.

Because Plaintiff has alleged two adverse employment actions in that her position was eliminated and that she was placed on administrative leave that materially altered the conditions of her employment, the Court finds that Plaintiff has satisfied the third element of her *prima facie* discrimination claim.[3]

### 2. *Inference of discrimination*

The Court must next determine whether the circumstances surrounding Plaintiff's placement on administrative leave and Defendant Board's elimination of her position give rise to an inference of discrimination. Under the fourth element of the *McDonnell Douglas* test, a plaintiff must "'present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was *a motivating factor*"'" contributing to the employer's decision to take the adverse employment action. *Vega*, 801 F.3d at 85 (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting 42 U.S.C. § 2000e-2(m))). "[A]n inference of discriminatory intent may be derived from a variety of circumstances," including the following:

"[T]he employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its

---

[3] Insofar as Plaintiff alleges that she suffered from an "atmosphere" of adverse employment actions that collectively altered her employment, *see* Dkt. No. 35 at 12, the Court rejects such claims.

invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009), *superseded by statute on other grounds,* (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted)) (other citations omitted).

Plaintiff relies on disparate treatment evidence to raise an inference of discrimination; but, as Defendants correctly note, she must show that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Shumway*, 118 F.3d at 64). What constitutes "all material respects" is based on "(1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40 (citation omitted). "Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.* (citation omitted).

Plaintiff argues that at least one male administrator, Jay Altobello, engaged in scandalous and unethical conduct unbefitting of a public school administrator when he had a sexual affair with a female employee whom he supervised. *See* Dkt. No. 35 at 15. Plaintiff alleges that the situation "eventually became common knowledge" among Defendant District's faculty, staff, and Board of Education, but his conduct was never investigated. *See id.* Furthermore, Plaintiff claims that all Defendant Hartwell did to address the matter was to advise Mr. Altobello to cease his conduct; and, later, he was permitted to "simply leave [Defendant] District under his own terms." *See id.* (citing Dkt. No. 35-2, Ex. E, Harwell Deposition Excerpts, 75:3-76:25).

Defendants contend that, at the time of the alleged affair, Defendant District did not have a policy prohibiting fraternization between employees.  *See* Dkt. No. 34-8 at 21 (citing Dkt. No. 34-7 at ¶¶ 109, 110).  Defendants assert that Defendant Hartwell investigated and discussed the rumors with Mr. Altobello but did not put him on administrative leave because Defendant District had no basis to take that action.  *See id.* (citing Dkt. No. 34-7 at ¶¶ 112-114).  Defendants argue that rumors about a relationship (which was not prohibited by Defendant District's policy) are not of "comparable seriousness" to undisputed events in which "a student's safety was endangered and an employee behaved inappropriately with a student's parent."  *See id.* at 22.

Here, the facts surrounding Mr. Altobello's departure are undisputed.  First, although Plaintiff and Mr. Altobello were both administrators within Defendant District, no party discusses whether they were subject to the same workplace standards.  Second, there is not a "reasonably close" resemblance of the facts and circumstances of these cases.  Mr. Altobello engaged in a consensual, sexual relationship with a subordinate, whereas Plaintiff allegedly acted inappropriately with regard to a student escaping school property and a phone call with the student's mother.  The Court thus finds that these cases are not "reasonably close" or "comparably serious" to demonstrate Defendant's discriminatory intent in eliminating Plaintiff's position while she was on administrative leave.

Next, Plaintiff argues that she identified other women who were targeted in the same manner as her because of their age or gender.  *See* Dkt. No. 35 at 16.  Plaintiff claims that she identified Cherise Malboeuf, who was forced to resign and/or denied training due to a possible hysterectomy, Andrea Lomber, who was denied tenure, and many other women who resigned or were "on a list to be pushed out of [Defendant] District, most of [whom] were women over the

age of 40." *See id.* (citing Dkt. No. 35-2, Ex. B, Pl's 50-h T., 118:1-20). The Court finds that these statements alone, supported only by Plaintiff's testimony in her 50-h examination, would not permit a trier of fact to reasonably infer that more likely than not her position as an administrator was eliminated because of her gender.

Finally, the Court must determine if Plaintiff has alleged "more likely than not" that the sequence of events leading to her placement on administrative leave and elimination of her position were due to discrimination because she was a woman. Plaintiff alleges that she made her complaint about Defendant Hartwell on March 3, 2015; and Defendants proceeded to place her on administrative leave the next day, March 4, 2015. *See* Dkt. No. 35 at 15. Additionally, Plaintiff argues that all of Defendant Hartwell's conduct about which she complained occurred throughout a span of six consecutive months during the 2014-2015 school year. *See id.*

Plaintiff has not pointed to any admissible evidence which, if believed by the trier of fact, would support a finding that Defendants' actions were based on gender discrimination. Thus, for this and all of the above-stated reasons, the Court finds that Plaintiff has not established the fourth element of her claim, *i.e.*, that the relevant circumstances give rise to an inference of discrimination; and, accordingly, she has not met her burden of establishing a *prima facie* case of gender discrimination. Because Plaintiff has not met this burden, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's first cause of action.

## C. Plaintiff's Title VII and ADEA retaliation claims

Title VII of the Civil Rights Act of 1964 includes an anti-retaliation provision, making it unlawful "for an employer to discriminate against any of his employees … because [the employee] has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "This anti-retaliation provision is intended to further the goals of the anti-discrimination provision 'by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting [*Burlington Northern & Santa Fe Ry. v.*] *White*, 548 U.S. [53,] 63, 126 S. Ct. 2405 [(2006)]). The ADEA has a similar anti-retaliation provision to protect employees who complain about their employers' discriminating on the basis of age. *See* 29 U.S.C. § 623(d).

Courts evaluate Title VII and ADEA retaliation claims under the three-step burden-shifting analysis set out in *McDonnell Douglas*. *See Hicks*, 593 F.3d at 164; *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '"(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."'" *Hicks*, 593 F.3d at 164 (quotation); *see also Kessler*, 461 F.3d at 204. The plaintiff's burden in proving a *prima facie* case is "de minimis." *Hicks*, 593 F.3d at 164. It is the court's role in evaluating a summary judgment motion "'to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive.'" *Id.* (quotation omitted) *See id.*

If the plaintiff sustains this initial burden, "'a presumption of retaliation arises,'" and the burden shifts to the defendant. *Id.* (citation omitted). Once the burden shifts to the defendant, it must then "'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* (citation omitted). If the defendant can do this, then the "'presumption of retaliation

dissipates'" and the burden shifts back to the employee to show that the retaliation "'was a substantial reason for the adverse employment action.'" *Id.* (citation omitted). "A plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[.]'"[4] *Id.* (quotation).

### 1. Prima facie case

#### a. Plaintiff's engaging in a protected activity

The Second Circuit has held that, under Title VII, "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3; *Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir.) (discussing scope of statute's "protected activity" provision), *cert. denied,* 528 U.S. 964, 120 S. Ct. 398, 145 L. Ed. 2d 310 (1999)). An informal complaint of discrimination can constitute a protected activity. *See id.* "While the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who

---

[4] The Supreme Court, in *Gross v. FBL Fin. Servs., Inc.*, left open the question of whether to prove an ADEA retaliation claim a plaintiff must show that, but-for her protected activity, she would not have suffered the alleged adverse employment action, which is the required standard to prove ADEA disparate treatment claims. *See Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41-42 (2d Cir. 2012) (summary order) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L. Ed. 2d 119 [(2009)]). Neither the Supreme Court since *Gross* nor the Second Circuit has decided whether the "but-for test" or "motivating factor" analysis is appropriate for ADEA retaliation claims. *See id.* As discussed *infra,* under either standard, the Court finds that Plaintiff has shown sufficient evidence in the record to permit a factfinder to determine that she was placed on administrative leave and her position was abolished "because of" her complaints of age discrimination. *See id.*

have filed formal charges.'" *Id.* (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Courts have found that this standard also applies to complaints pursuant to the ADEA. *See, e.g.*, *Delville v. Firmenich Inc.*, 920 F. Supp. 2d 446, 463-64 (S.D.N.Y. 2013).

However, an employee must clarify to the employer that she is complaining of unfair treatment due to her membership in a protected class. Although "complaints may be informal, they cannot be so vague or 'generalized' that the employer could not 'reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII [or the ADEA].'" *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (alternation and other citation omitted)) (other citations omitted).

Defendants contend that Plaintiff did not file a complaint with Defendant District; and, instead, she merely expressed "some concerns" to Ms. Roth, which Ms. Roth characterized as "venting" from one colleague to another. *See* Dkt. No. 34-8 at 23. Defendants assert that, although Plaintiff was "upset" about Defendant Hartwell's behavior toward her, she did not attribute the alleged behavior to her age or gender. *See id.* Furthermore, Plaintiff stated to Ms. Roth, "[m]aybe I should file a complaint," which Defendants argue shows that she was not actually making a complaint at that time. *See id.*

Plaintiff asserts that she directly told Ms. Roth that she wanted to pursue a complaint for harassment and discrimination against Defendant Hartwell. *See* Dkt. No. 35 at 17. In Ms. Roth's deposition, she also corroborated that she and Plaintiff were not friends in any capacity; and, therefore, Plaintiff argues she was clearly not "venting" but making a complaint with the Title IX Coordinator. *See id.* at 18-19. Plaintiff also claims that she told Ms. Roth she felt she was being "targeted and driven out" for discriminatory reasons based on her age and gender and

to save her salary as she was the highest paid administrator.  *See id.* at 19.  Plaintiff asserts that being the highest paid administrator was commensurate with her experience and seniority, which was a form of age discrimination.  *See id.*  Furthermore, Plaintiff testified in her 50-h hearing that she wanted to pursue a complaint against Defendant Hartwell for harassment because she felt that he was "driving [her] out because he [didn't] want to pay [Plaintiff her] benefits."  *See* Dkt. No. 35-2, Ex. B, 74:8-10.  Plaintiff also stated that Defendant Hartwell did not "want to pay for what's in [her] contract."  *See id.* at 74:10-11.  Thus, because of the ongoing issues she was facing with Defendant Hartwell, Plaintiff told Ms. Roth that she wanted to file a complaint.  *See id.*

Plaintiff, who was 53-years-old at the time of these events, had been employed in public education for twenty-one years and had held her position as Director of Special Services at Defendant District for ten years.  *See* Dkt. No. 1 at ¶¶ 10-11.  Her salary was commensurate with her experience and seniority.  *See* Dkt. No. 35 at ¶ 19.  These facts, in addition to Plaintiff's and Ms. Roth's own statements about their discussion, show that Ms. Roth reasonably could have inferred that Plaintiff's complaint about "bullying" because she was the "highest paid administrator" was an informal complaint about unlawful age discrimination.  Thus, the Court finds that Plaintiff engaged in a protected activity under the ADEA when she informally complained to Ms. Roth on March 3, 2015, and further holds that Plaintiff has alleged the first element of her *prima facie* case for retaliation under the ADEA.

There is no evidence, however, that Plaintiff complained of gender discrimination to Ms. Roth.  Neither Plaintiff nor Ms. Roth testified that Plaintiff made such complaints.  Therefore, the Court finds that Plaintiff has not alleged the first element of her *prima facie* case for retaliation under Title VII.  Because Plaintiff has not established a *prima facie* case for

retaliation under Title VII, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's third cause of action.

### b. Remaining elements of Plaintiff's prima facie case for retaliation under the ADEA

The Court must next consider whether Defendants knew about Plaintiff's informal complaint, whether Plaintiff suffered an adverse employment action, and whether there was a causal connection between Plaintiff's complaint and Defendants' actions.  First, Defendant Hartwell was clearly aware of Plaintiff's informal complaint to Ms. Roth because Ms. Roth admits she told him about it.  *See* Dkt. No. 34-2 at ¶ 11; *see also* Dkt. No. 35-2, Ex. D, Roth Testimony, at 28:5-17.  One court in this District has found that a defendant-school district is "aware" of a complaint if it was made directly to the superintendent.  *See Brooks v. Fonda-Fultonville Cent. Sch. Dist.*, 938 F. Supp. 1094, 1106 (N.D.N.Y. 1996).  Thus, since Plaintiff alleged that Defendant Hartwell, as the superintendent, had direct knowledge of the complaint, she sufficiently alleged that Defendants District and Board were aware of her informal complaint.  Therefore, the Court finds that Plaintiff has established the second element of her *prima facie* case for retaliation.

Second, the parties concede that eliminating Plaintiff's position constitutes an adverse employment action to satisfy the third element of Plaintiff's *prima facie* case.  *See generally* Dkt. No. 34-8 at 25-26.  As discussed *supra*, Plaintiff's placement on administrative leave in this situation was also adverse because Defendant District allegedly acted differently toward Plaintiff as compared to others who had been disciplined.  *See Brown*, 673 F.3d at 150. Because Plaintiff suffered these adverse employment actions, the Court finds that she has satisfied the third element of her *prima facie* case for retaliation.

Finally, the Court must consider whether Plaintiff asserted a causal connection between the adverse actions she suffered and her informal complaint to Ms. Roth. A brief look at the facts in Plaintiff's complaint shows that she was placed on administrative leave the day after she complained to Ms. Roth. *See* Dkt. No. 1 at ¶¶ 19, 21-24. Furthermore, Plaintiff was not informed that her position was to be eliminated until April 6, 2015 – the day before the Board of Education voted on it – or that her position was actually eliminated until April 27, 2015, even though Defendant District had apparently known about the fate of her position as early as fall of 2014. *See* Dkt. No. 34-1, Ex. C, at 16; Dkt. No. 34-8 at 26. Based on these facts, the Court finds that Plaintiff has satisfied the fourth element of her *prima facie* case for retaliation.

In sum, the Court finds that Plaintiff has established all the elements of her *prima facie* case for retaliation based on her age pursuant to the ADEA. Thus, the Court must next determine whether Defendants District and Board had legitimate, non-discriminatory reasons for eliminating Plaintiff's position and whether Plaintiff can show that those reasons were mere pretext.

### 2. *Defendants' legitimate, non-retaliatory reason for taking adverse employment actions against Plaintiff*

Because Plaintiff has established a *prima facie* case for retaliation, the burden shifts to Defendants to articulate some legitimate, non-retaliatory reason for taking adverse employment actions against her. The Court analyzes Defendants' proffered explanation under the same standard as Title VII or ADEA discrimination claims. In those cases, the Supreme Court has held, "The defendant need not persuade the court that it was actually motivated by the proffered reasons. … It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it [retaliated] against the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (internal citation and footnote omitted). According to the Supreme Court, "[t]o

accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [employment decision]. . . . The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255 (internal footnotes omitted). The Court also noted that "[a]n articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely through an answer to the complaint or by argument of counsel." *Id.* at 255 n.9.

Defendants first argue that Plaintiff was placed on administrative leave for legitimate reasons in that Defendant District received reports from its employees, as well as the parent of a special needs student, that Plaintiff had not adequately supervised a student under her supervision and then yelled at the student's parent during a phone call. *See* Dkt. No. 34-8 at 27 (citing Dkt. No. 34-7 at ¶¶ 48-49, 56, 60). Defendants assert that endangering the welfare of a student is a legitimate reason for placing a school employee on administrative leave. *See id.* (citing *Perez-Dickson v. Bridgeport Bd. of Educ.*, No. 3:13-CV-198 (WWE), 2016 WL 236206 (D. Conn. Jan. 19, 2016)). Defendants further argue that, on March 4, 2015, Ms. Roth and Defendant Hartwell met with Plaintiff and informed her that she was being placed on administrative leave because of the need to investigate the situation with the student and parent. *See id.* at 27-28 (citing Dkt. No. 34-7 at ¶¶ 68-73). Thus, Defendants argue, Defendant Hartwell's decision to place Plaintiff on administrative leave had nothing to do with Plaintiff's age or gender, nor was it in retaliation for her alleged complaint. *See id.* at 28. Defendants also argue that Plaintiff's position was eliminated because of administrative restructuring and budgetary needs. *See id.* For all these reasons, the Court finds that Defendants have offered legitimate, non-retaliatory reasons for placing Plaintiff on administrative leave and eliminating her position.

### 3. Pretext

Because Defendants have met their burden to proffer a legitimate, non-retaliatory reason for their adverse employment actions against Plaintiff, the burden shifts once again to Plaintiff to prove that a retaliatory motive played a part in the adverse employment action, even if it was not the sole cause. Essentially, Plaintiff must show that Defendants' non-retaliatory reasoning was pretext.

Plaintiff lists the following eight reasons to support her contention that Defendants' conduct was pretextual: (1) close temporal proximity between her complaint and her placement on administrative leave, (2) the incident involving her phone conversation with a parent was an "excuse" to remove her as it was the lone black mark on her "spotless professional record"; (3) despite claiming "budgetary reductions" for abolishing her position, Defendant District paid more money to new and existing employees; (4) the nature and amount of special education work for Defendant District did not change during the 2014-2015 year or after her position was abolished; (5) Defendant District created a new position for which she was qualified but failed to inform her of the new administrative job opening when it became available; (6) Plaintiff was the only administrative employee to have her position abolished during the 2014-2015 school year; (7) Defendant Hartwell targeted and harassed her throughout the entire school year after he joined Defendant District; and (8) after Defendants placed her on leave they exhibited an unusual level of animosity towards her. *See* Dkt. No. 35 at 22-27.

Plaintiff provides evidence to support each of these contentions. For example, although Defendants claim that Plaintiff's position was abolished due to "budgetary reductions," Plaintiff alleges that Defendant District ended up spending more money than it was paying to cover her salary. According to Plaintiff, at the time she was terminated, her salary was around $86,000,

and the starting salary for the new administrative position Defendant District created was around $88,000. *See* Dkt. No. 35 at 23 (citing Dkt. No. 35-2, Ex. E at 69:21-25). Further, Defendant Hartwell acknowledged in his testimony that, in essence, Defendant District ended up trading one administrative position for another. *See id.* (citing Dkt. No. 35-2, Ex. E at 25:8-11). Additionally, Plaintiff asserts, to continue to meet all of the responsibilities of her position that remained after it was abolished, Defendant District created stipend positions to fill those needs. *See id.* Some of those stipends, Plaintiff argues, paid employees an extra $5,000. *See id.* (citing Dkt. No. 35-2, Ex. E at 73:20-25).

Furthermore, Plaintiff asserts that Defendants failed to inform her of the new administrative job opening when it became available; and, when Defendant Hartwell was asked if he believed Plaintiff met the qualifications for that position, he responded "absolutely not." *See id.* at 25 (citing Dkt. No. 35-2, Ex. E, Hartwell Depo, at 68:3-69:1). Plaintiff points to Defendant Hartwell's testimony that she lacked interpersonal and communication skills and leadership abilities; yet, after she was terminated from Defendant District, Plaintiff was subsequently hired as the Elementary Principal and Director of Special Education for the Poland Central School District. *See id.* at 25-26 (citing Dkt. No. 35-2, Ex. E at 68:3-69:1). Plaintiff also submitted exhibits showing a clear degree of overlap and similarities in terms of the skills and experience required between her position as Director of Special Services and the newly created position of the Executive Director of Academic and Instructional Excellence. *See id.* at 25-26 (citing Dkt. No. 35-2, Exs. F, G, H[5]).

---

[5] Defendants contend that these exhibits are inadmissible and that the Court cannot consider them because Attorney Ciotoli does not possess the personal knowledge necessary to testify to the nature, substance, meaning, value, or authenticity of these exhibits. *See* Dkt. No. 36, Defs' Reply, at 4. The Court rejects this objection as attorneys regularly submit affirmations that merely list the documents that are included in their submissions

The Court finds that Plaintiff has adduced evidence showing that Defendants' reasons for placing her on administrative leave and eliminating her position are pretextual, thus creating a clear dispute of fact; and, for these reasons, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's ADEA retaliation claim.

**D. Plaintiff's claim pursuant to the Equal Protection Clause**

"[O]nce the color of state law requirement is met, except for the issue of individual liability, an 'equal protection claim parallels [a plaintiff's] Title VII claim.'" *Vega*, 801 F.3d at 82 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)). For the reasons that the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Title VII gender-based discrimination and retaliation claims, the Court further grants Defendants' motion for summary judgment with respect to Plaintiff's gender-based Equal Protection claim as they apply the same standard.[6]

**E. Plaintiff's claim pursuant to the Due Process Clause**

The parties agree that Plaintiff was tenured pursuant to the New York Education Law, but they dispute whether she was entitled to a pre-termination hearing. In the analogous case of *Elmendorf v. Howell*, the plaintiff claimed that the defendants violated her due process rights by failing to conduct a pre-termination hearing when they abolished her position as Building Principal and created the position of Assistant Superintendent. *See Elmendorf v. Howell*, 962 F. Supp. 326, 329, 331-32 (N.D.N.Y. 1997) (McAvoy, J.). The *Elmendorf* court noted that, "[a]lthough the Constitution protects property interests, it does not create them. Rather, 'they

---

[6] There is also no evidence in the record to support a claim of Equal Protection based on age; and, therefore, the Court dismisses Plaintiff's Equal Protection claim to the extent this claim is based on Plaintiff's age.

are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. …'" *Id.* at 332 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed.2d 548 (1972)).  The parties did not dispute that "'[t]enure, once conferred, is a property interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments,'" and that the plaintiff was tenured pursuant to the New York Educational Law.  *Id.* (quoting *Blum v. Schlegel*, 18 F.3d 1005, 1014 (2d Cir. 1994) (citations omitted)).

The court further noted that, after reviewing the relevant case law, it was "clear that under New York law, when a position held by a tenured individual is *abolished* no pre-termination hearing is required[.]"  *Id.* (citing *Mitchell v. Bd. of Education of Great Neck Public Schools*, 40 N.Y.2d 904, 389 N.Y.S.2d 354, 355, 357 N.E.2d 1008, 1009 (1976); *Beers v. Nyquist*, 72 Misc. 2d 210, 211, 338 N.Y.S.2d 745, 746 (Sup. Ct. Albany County 1972)).  However, the court held that it "cannot find as a matter of law that plaintiff was not entitled to a pre-termination hearing" because "when there is a question of fact as to the similarity of the subsequently created position, the Court should not dispose of a concomitant due process claim on summary judgment."  *Id.* (citing *DeSimone v. Bd. of Educ.*, *South Huntington Union Free Sch. Dist.*, 604 F. Supp. 1180, 1184 (E.D.N.Y. 1985)).

Quoting *DeSimone*, the court noted that a plaintiff can prove that she was deprived of property without due process if she shows either "'(1) that at the time of the plaintiff[']s discharge there existed genuine factual issues bearing upon the similarity or dissimilarity of the positions; or (2) that at the time of plaintiff's discharge it could be said as a matter of law that the positions were similar within the meaning of Education Law § 2510(1).'" *Id.* (quoting [*DeSimone*,] 604 F. Supp. at 1184).  Furthermore, "'[d]efendant can prove that there was no

deprivation of property without due process if it can show that at the time of the discharge it could be said as a matter of law that the positions were not similar within the meaning of Education law § 2510(1).'" *Id.* (quoting [*DeSimone*,] 604 F. Supp. at 1184). Thus, the court denied the parties' motions for summary judgment because there was a material factual issue about the similarity of the Building Principal and Assistant Superintendent positions. *See id.*

In this case, the undisputed facts show that, after abolishing Plaintiff's position of Director of Student Services, Defendant District created the position Executive Director of Academic and Instructional Excellence. Plaintiff has submitted Exhibits F, G, and H, which include the job descriptions and qualifications for both positions. *See* Dkt. No. 35-2, Exs. F, G, H. Upon review of these exhibits, the Court finds that a question of fact exists regarding the similarity of these positions. If a factfinder found that these positions were reasonably similar or that Plaintiff had the appropriate qualifications for the subsequently created position, then the factfinder would have to find that Plaintiff was deprived of her due process rights when Defendants terminated her without a pre-termination hearing. Thus, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's due process claim.[7]

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 34, is **GRANTED IN PART** and **DENIED IN PART**; and the Court further

---

[7] However, insofar as Plaintiff alleges this claim against Defendant Hartwell in his *official* capacity, the Court dismisses that claim as redundant.

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's first and third causes of action for discrimination and retaliation based on gender pursuant to Title VII against Defendants District and Board is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's eighth cause of action for violation of the Equal Protection Clause, brought pursuant to 42 U.S.C. § 1983, against all Defendants is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's fifth cause of action for unlawful retaliation based on age pursuant to the ADEA against Defendants District and Board is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff's ninth cause of action for violation of the Due Process Clauses of the Fifth and Fourteenth Amendments based on a deprivation of Plaintiff's property interests, brought pursuant to 42 U.S.C. § 1983, against all Defendants is **DENIED**; and the Court further

**ORDERS** that the trial of this action shall commence at **10:00 a.m.** on **June 22, 2020,** in **Syracuse, New York.** The Court will issue a separate Final Pretrial Scheduling Order, setting forth the deadlines for filing pretrial submissions, including motions *in limine*, at a later date.

**IT IS SO ORDERED.**

Dated: March 20, 2020
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Judge